UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| CARLOS CLIFFORD LOWE, | ) | | |
| | ) | | |
| Petitioner, | ) | | |
| | ) | | |
| v. | ) | Nos: | 3:05-cr-022 |
| | ) | | 3:08-cv-265 |
| UNITED STATES OF AMERICA, | ) | | (VARLAN/SHIRLEY) |
| | ) | | |
| Respondent. | ) | | |

**MEMORANDUM**

This is a *pro se* motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 filed by petitioner Carlos Clifford Lowe ("petitioner"). The government has filed its response to the § 2255 motion. For the following reasons, the § 2255 motion will be **DENIED** and this action will be **DISMISSED**.

**I.     Standard of Review**

This Court must vacate and set aside petitioner's conviction upon a finding that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. To prevail under § 2255, petitioner "must show a 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1968)).

Under Rule 8 of the Rules Governing Section 2255 Proceedings In The United States District Courts, the Court is to determine after a review of the answer and the records of the case whether an evidentiary hearing is required. If the motion to vacate, the answer, and the records of the case show conclusively that petitioner is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

## II.     Factual Background

Petitioner was charged in a two-count indictment with felon in possession of a firearm and ammunition (count one) and felon in possession of ammunition (count two), in violation of 18 U.S.C. §§ 922(g) and 924(e). [Criminal Action No. 3:05-cr-22, Doc. 1, Indictment]. He was found guilty by a jury of count two and acquitted of count one. [Doc. 24, Verdict]. Petitioner was sentenced as an armed career criminal to a term of imprisonment of 235 months. [Doc. 30, Judgment]. Petitioner filed a notice of appeal. The Sixth Circuit affirmed the conviction and sentence on direct appeal. *United States v. Lowe*, No. 06-5352 (6th Cir. April 27, 2007) (unpublished decision) [Doc. 38, Order].

On appeal, petitioner's counsel moved to withdraw and submitted a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), in which he raised two issues for review: whether the evidence was sufficient to support the conviction in light of his defense of justification and whether petitioner's sentence was reasonable. *United States v. Lowe*, slip op. at 2. The Sixth Circuit found that the evidence was sufficient to overcome petitioner's defense of justification, *id*. at 3, and that his sentence was reasonable, *id*. at 3-4. The Sixth Circuit also

"found no issues of arguable merit after our independent review of the proceedings before the district court." [*Id*. at 4]. In support of his § 2255 motion, petitioner alleges numerous instances of ineffective assistance of counsel.

**III. Discussion**

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

To establish that his attorney was not performing "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970), petitioner must demonstrate that the attorney's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 687-88. In judging an attorney's conduct, a court should consider all the circumstances and facts of the particular case. *Id*. at 690. Additionally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

The issue is whether counsel's performance "was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc*). Because he is seeking relief under § 2255, petitioner bears the burden of proving by a preponderance of the evidence that his counsel was deficient. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

Petitioner alleges twelve specific claims of ineffective assistance of trial counsel and one claim of ineffective assistance of appellate counsel, as paraphrased by the Court as follows. The Court will consider each of the claims in turn.

### A. Counsel failed to conduct an adequate pretrial investigation.

To establish that petitioner was a felon in possession of ammunition, the government was required to prove beyond a reasonable doubt that (1) petitioner had a prior conviction for a crime punishable by imprisonment for a term exceeding one year; (2) petitioner knowingly possessed the ammunition; and (3) the possession was in or affecting interstate commerce. *United States v. Daniel*, 134 F.3d 1259, 1263 (6th Cir. 1998).

At trial, the government presented the testimony of Knoxville Police Officer Timothy Ward. [Doc. 34, Transcript of Trial, p. 6]. Officer Ward testified that he saw petitioner driving a very dirty Buick automobile, but the license plate was very clean. [*Id.* at 7-8]. He ran the plate through the NCIC database and learned the plate was registered to a Pontiac vehicle. [*Id.* at 8]. Officer Ward then stopped petitioner and asked for a driver's license. [*Id.* at 10]. After being told petitioner's license had been suspended for several years, Officer Ward arrested him. [*Id.*] Upon conducting a pat-down search, the officer discovered two

4

rounds of ammunition in petitioner's right pants pocket, which he later learned were .25 caliber. [*Id*. at 10-11]. Officer Ward then handcuffed petitioner and placed him in the back of his police car. [*Id*. at 12].

Officer Ward testified that the ignition on the vehicle had been "popped"; that fact in addition to the license plate being from a different vehicle made Officer Ward suspect the Buick might be stolen. [*Id*.]. Upon searching the car, he discovered a .25 caliber handgun in the passenger side glove compartment which was loaded with a magazine containing seven rounds of ammunition. [*Id*. at 12-13]. Officer Ward seized the firearm and the magazine, and placed them in evidence bags, with the firearm in one bag and the magazine with seven rounds in addition to the two separate rounds in another bag. [*Id*. at 14-15]. The bag with the firearm was admitted as Exhibit 1 and the bag with the nine rounds of ammunition was admitted as Exhibit 2. [*Id*. at 15].

Officer Ward admitted on cross-examination that the Buick had not been reported stolen, nor did he ever try to determine who the owner of the car was. [*Id*. at 25]. He also admitted that he could not identity at trial which of the nine rounds of ammunition in the bag were the two that came from petitioner's pocket. [*Id*. at 29]. This was because the rounds were commingled in the bag at the time of trial. [*Id*.]. Officer Ward testified that at the time he placed the ammunition in the evidence bag and initialed it, the magazine held the seven rounds and there were two separate rounds from petitioner's pocket. [*Id*]. He also admitted that he could not testify as to whether the ammunition rounds were actually live rounds or not. [*Id*. at 35].

At the conclusion of Officer Ward's testimony, the parties stipulated that petitioner was a convicted felon at the time of the offense and that the firearm and ammunition affected interstate commerce. [*Id*. at 35-37]. The government then rested and the defense moved for a directed verdict of acquittal, which was denied. [*Id*. at 37-38].

Petitioner did not challenge the sufficiency of the evidence against him but rather claimed his possession of the ammunition was justified. To establish a defense of justification, petitioner was required to prove by a preponderance of the evidence that he possessed the ammunition under duress or necessity. *United States v. Singleton*, 902 F.2d 471,472 (6th Cir. 1990).

In *Singleton*, the Sixth Circuit adopted the four-factor test for a justification defense established by the Fifth Circuit, which requires a defendant to show:

> (1) that defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;
>
> (2) that defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct;
>
> (3) that defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm; and
>
> (4) that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm.

*United States v. Singleton*, 902 F.2d at 472-73 (quoting *United States v. Gant*, 691 F.2d 1159, 1162-63 (5th Cir. 1982)) (internal citations, quotation marks, and brackets omitted). The

6

Sixth Circuit added a fifth factor, that the defendant "did not maintain possession any longer than absolutely necessary." *Id*. at 473 (citing *United States v. Stover*, 822 F.2d 48 (8th Cir. 1987)).

Petitioner testified that on the day of the offense, he got into an argument with his live-in girlfriend and went out to sit in the car and listen to the radio; he was later joined by his grandson who picked up some bullets in the seat. [Doc. 34, Transcript of Trial, p. 43]. Petitioner told the boy to hand him the bullets and he put them in his pocket to keep his grandson from getting hurt. [*Id*. at 44]. He forgot about the bullets and when his girlfriend came out to continue the argument, he drove off. [*Id*. at 44]. According to petitioner, he did not have a license to drive the car, nor did he have permission to drive it – his son had borrowed it from Mike Williams, a person petitioner had only seen a time or two. [*Id*.]. After riding around, he was stopped by the police. [*Id*. at 45]. Petitioner testified that he did not know the gun was in the car and would not have gotten into the car if he had known the gun was there. [*Id*. at 46]. He reiterated that he pocketed the bullets to keep his grandson and other children from getting hurt.

> Well, that's my – you know, I love him, I wouldn't see nothin' happen to him. You know, him, if he hadn't a got hurt with them, he might a throwed them out there in the yard and one of the other kids might 'a got a hold of it.
>
> You know, if you throw a bullet in the trash or anything, it's going to go off if it's 'a burnin' or whatever, if it's hit wrong or somebody runs over it maybe with a lawn mower, something, hit it. I don't know. 'Cause, like I say, I don't mess with them.

7

[*Id.* at 47]. On cross-examination, petitioner admitted that as a convicted felon he knew he was prohibited from possessing ammunition, but believed his act was necessary to dispose of the bullets to keep a child from getting hold of them. [*Id.* at 50].

Michael Williams was called by the government as a rebuttal witness. [*Id.* at 54]. He testified that he loaned his car to Alvin Lowe, the petitioner's brother, approximately two days before petitioner's arrest and had not given permission for petitioner to drive the car. [*Id.* at 56-57]. Mr. Williams further testified that at the time he loaned the car to Alvin Lowe, there was not a firearm or ammunition in it. [*Id.* at 57]. He denied even owning a firearm or ammunition. [*Id.*]. On cross-examination, Mr. Williams admitted that, although he loaned the car to Alvin Lowe, he had no idea how many people had driven his car during the two-day period. [*Id.* at 59].

Officer Timothy Ward, petitioner, and Michael Williams were the only individuals who testified at trial. Petitioner now claims that his attorneys did not conduct an adequate pretrial investigation and discover additional individuals with knowledge about the case. Specifically, petitioner complains that counsel did not interview his ex-wife Kimberly Lowe, his son's girlfriend Lisa Raines, his nephew Joey Steven Prydmore, or his son Jeffery Lowe. Petitioner makes the blanket assertion that these individuals would have provided material support for the justification defense with respect to the circumstances of the bullets found in the front seat.

8

Petitioner does not state, however, what knowledge these individuals had about the case. In addition, any testimony regarding the fact that petitioner found the bullets on the front seat of the automobile and put them in his pocket would have been cumulative to petitioner's own testimony. *See, e.g., United States v. Pierce*, 62 F.3d 818, 833 (6th Cir. 1995) (failure to present potential witnesses who are cumulative, or unreliable and subject to impeachment, does not constitute ineffective assistance of counsel). Petitioner has failed to demonstrate ineffective assistance of counsel with respect to this claim.

**B.  Counsel failed to call favorable witnesses to testify on behalf of petitioner.**

In this claim, petitioner is referring to the individuals listed in his first claim. For the same reasons set forth above, petitioner has failed to demonstrate ineffective assistance of counsel with respect to this claim.

**C.  Counsel failed to challenge the stop of petitioner's vehicle, his arrest, and the seizure of contraband.**

Petitioner contends that counsel should have challenged the traffic stop under the Fourth Amendment. He does not, however, allege a basis for a Fourth Amendment challenge, other than to note that Officer Ward ran the license tag based on the "dirty car - clean tag" look of the vehicle and learned that the tag was issued to a Pontiac and not the Buick that petitioner was driving. Based upon the record in this case, there were no grounds for a Fourth Amendment challenge to the traffic stop. *See United States v. Ellison*, 462 F.3d 557, 561 (6th Cir. 2006) ("a motorist has no reasonable expectation of privacy in the information contained on his license plate under the Fourth Amendment"). Counsel was not

9

ineffective for failing to make a challenge to the traffic stop. *See United States v. Hanley*, 906 F.2d 1116, 1121 (6th Cir. 1990) (the failure of defense counsel to pursue frivolous motions and objections cannot constitute ineffective assistance of counsel).

**D.     Counsel failed to properly advise petitioner of the elements of the offense.**

Petitioner alleges his attorneys advised him that, in order to convict him of possession of ammunition, "the prosecution had to prove that he possessed ammunition that was 'live' and capable of effecting an explosion to expell [sic] a projectile." [Doc. 41, Memorandum in Support of § 2255 Motion, p. 5]. During closing argument, petitioner's counsel argued that there was no proof that the ammunition was live. [Doc. 34, Transcript of Trial, pp. 67-68]. In light of that, the government requested the Court to instruct the jury on the definition of "ammunition." [*Id*. at 77]. The Court agreed to do so, because the jury charge defined "firearm." [*Id*. at 78]. The Court thus instructed the jury that "[t]he term 'ammunition' means ammunition or cartridge cases, primers, bullets, or propellant powder designed for use in any firearm." [*Id*. at 89 (quoting 18 U.S.C. § 921(a)(17))].

Petitioner claims that had counsel advised him of the broad definition of ammunition, "there is a reasonable probability that Movant would have been more amenable to plea-negotiations and possible agreement without a jury trial." [Doc. 41, Memorandum in Support of § 2255 Motion, p. 5]. Petitioner's defense, however, was not that the ammunition was not live; the defense instead was that petitioner was justified in possessing the ammunition, presumably because it was live and could injure a child. The allegation now that petitioner might have pleaded guilty had he been told of the broad definition of ammunition lacks

10

credibility and his claim of ineffective assistance of counsel lacks merit. *See Humphress v. United States*, 398 F.3d 855 (6th Cir. 2005). "A petitioner who claims that he was denied effective assistance of counsel with regard to whether or not to plead guilty must prove that (1) counsel rendered constitutionally deficient performance, and (2) there is a reasonable probability that but for counsel's deficient performance, the petitioner would have pled guilty." *Id*. at 859 (citation omitted).

### E. Counsel failed to object to a multiplicitous indictment.

Petitioner alleges that counsel should have moved to dismiss count one of the indictment with respect to the possession of ammunition at the close of the government's proof. According to petitioner, the indictment was multiplicitous and the jury may have reached a compromise verdict. The indictment was not, in fact, multiplicitous because the ammunition charged in the two counts was not the same. Counsel was not ineffective in failing to make a frivolous motion.

### F. Counsel failed to properly advise petitioner on the defense of necessity.

Petitioner claims that after explaining the circumstances to his attorneys, they advised him to pursue a justification defense at trial. Based on that advice, he rejected plea negotiations. According to petitioner, it was not until the Court instructed the jury on the law that he realized his defense was inadequate. Again, he alleges that he "would have been amenable to plea negotiations had he known that he had no defense against possessing bullets in his pocket." [Doc. 41, Memorandum in Support of § 2255 Motion, p. 7]. Petitioner also

11

alleges that, absent his attorneys' advice, he "would not have testified and admitted possession of the bullets." [*Id.*].

The last allegation ignores the fact that Officer Ward testified he found the two bullets in petitioner's pants pocket. Thus there was ample evidence that petitioner possessed the bullets without petitioner's testimony. In addition, petitioner's acquittal on count one may have resulted from his candor and admission of guilt with respect to count two. As to the claim that he might have pleaded guilty, there is nothing in the record to support that claim absent petitioner's bare assertion, and he has failed to demonstrate ineffective assistance in that regard.

### G. Counsel failed to object to the prosecutor's inappropriate cross-examination of petitioner.

Petitioner alleges counsel should have objected when the government asked him about his criminal record. According to petitioner, counsel advised him to stipulate that he was a convicted felon in order to "prevent the Prosecutor from harping on the particulars of prior felony convictions." [*Id.* at 8]. During his direct examination, petitioner told the jury about his prior convictions. [Doc. 34, Transcript of Trial, pp. 40-41]. Accordingly, it was not error for the government to question him concerning the convictions. *See United States v. Johnson*, 720 F.2d 519, 522-23 (8th Cir. 1983) (where defense counsel brought out the defendant's prior convictions on direct examination, the prosecutor is entitled to cross-examine the defendant about his testimony) (citations omitted). Any objection by defense counsel to the cross-

12

examination would have lacked merit and counsel was not ineffective in failing to make such an objection.

## H. Counsel failed to object to evidence which had been commingled between the date of petitioner's arrest and his trial.

Petitioner refers to the fact that the two bullets from his pocket were commingled with the bullets from the firearm, and that the government could not prove at trial which bullets were which. Officer Ward testified, and petitioner admitted, that petitioner had two bullets in his pocket. The fact that the bullets could not be identified was irrelevant to petitioner's conviction. In addition, defense counsel used the fact of the commingling to criticize the government's handling of the case and, by extension, to suggest that the government had failed to prove that petitioner was aware of the firearm and ammunition in the glove compartment, the charge on which petitioner was acquitted. Under the circumstances, counsel did not render ineffective assistance in failing to object to the commingled evidence.

## I. Counsel failed to object to the Court's definition of ammunition.

Petitioner alleges that the Court's definition of ammunition constructively amended the indictment by broadening the basis for conviction. According to petitioner, he was indicted "for possessing complete cartridges capable of firing a projectile, but when defense counsel seized on a hole in the Prosecution's case the trial court moved the goal post by allowing a conviction if Movant possessed incomplete cartridges and/or components of such." [Doc. 41, Memorandum in Support of § 2255 Motion, p. 10].

13

Petitioner's argument is contradicted in the record. Both counts of the indictment charged petitioner with possession of ammunition; no mention was made of whether the ammunition was complete cartridges which were capable of firing a projectile. [Doc. 1, Indictment]. In addition, the Court's definition was consistent with the law. "The term 'ammunition' means ammunition or cartridge cases, primer, bullets, or propellent powder designed for use in any firearm." 18 U.S.C. § 921(17)(A). In any event, defense counsel unsuccessfully argued that an instruction on the definition of ammunition was unnecessary and the jury could decide for itself what was ammunition. [Doc. 34, Transcript of Trial, p. 78]. Petitioner has failed to demonstrate ineffective assistance of counsel in this regard.

**J.      Counsel failed to properly argue the Rule 29 motion for judgment of acquittal.**

At the close of the government's proof, defense counsel moved for a directed verdict in favor of defendant and the motion was denied. [*Id*. at 37-38]. Counsel renewed the motion at the close of all the proof and again it was denied. [*Id*. at 61]. Petitioner now claims that counsel's motion were "lackluster" and lacked "zeal." [Doc. 41, Memorandum in Support of § 2255 Motion, p. 10]. Because the evidence was sufficient to convict petitioner, an alleged error with respect to a motion for directed verdict cannot constitute ineffective assistance of counsel. *See Maupin v. Smith*, 785 F.2d 135, 140 (1986) (counsel who failed to move for a directed verdict was not ineffective given the court's conclusion that the evidence was sufficient to support the conviction).

14

Case 3:05-cr-00022   Document 47   Filed 09/27/11   Page 14 of 19   PageID #: 88

**K.     Counsel failed to object to the prosecutor's improper closing arguments.**

Petitioner alleges that the prosecution's closing summation shifted the burden of proof to petitioner; he also complains that the prosecution referred to him as a "gun-toting thug." [Doc. 41, Memorandum in Support of § 2255 Motion, p. 11]. Petitioner contends counsel was ineffective by failing to object to both.

As to the first claim, the government emphasized that petitioner had the burden of proving his justification defense by a preponderance of the evidence. [Doc. 34, Transcript of Trial, pp. 72-73]. That was a correct statement of the law and did not shift the burden of proof to petitioner. Counsel was not ineffective in failing to make an objection to this argument.

With respect to the second claim, "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). To put this issue in context, the government argued in pertinent detail as follows:

> You know what? We've got a convicted felon running around town with ammunition and a gun, and we are going to ask you to return a verdict on guilty on both counts of the indictment in this case. We're going to ask you to take this gun-toting thug off the streets.

[Doc. 34, Transcript of Trial, p. 73].

The Court concludes that a single, isolated reference to petitioner as a "gun-toting thug" did not deny petitioner's right to due process. *See, e.g., United States v. Payne*, 2 F.3d 706, 712 (6th Cir. 1993) ("If the court finds prosecutorial misconduct, the court must then consider whether, on the entire record, the misconduct can be said to be harmless. To deny a defendant a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeate[d] the entire atmosphere of the trial.'") (quoting *United States v. Vance*, 871 F.2d 572, 577 (6th Cir. 1989)).

In addition, petitioner was acquitted of possessing the loaded firearm, so he cannot demonstrate prejudice from this remark. Counsel was not ineffective in failing to object to the prosecutor's remark.

**L.    Counsel failed to object to the Presentence Report and failed to properly defend petitioner during sentencing.**

Petitioner alleges counsel failed to object to his status as an armed career criminal and claims that his prior convictions were not proper predicate convictions under § 924(e). The law provides a minimum mandatory sentence of fifteen (15) years for a person convicted of violating 18 U.S.C. § 922(g) who has three prior convictions for "a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). A violent felony is "any crime punishable by imprisonment for a term exceeding one year," that "(I) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of

16

explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id*. § 924(e)(2)(B).

Petitioner had four qualifying felony convictions: rape, third degree burglary, rape, and aggravated assault. [Presentence Investigation Report, pp. 8-14, ¶¶ 33, 35, 37, 48, respectively]. Petitioner first claims that he was not represented by counsel during one of these convictions, without specifying which conviction. This claim is contradicted in the record; the Presentence Report indicates that petitioner was represented by counsel in all four convictions. [*Id*.].

Petitioner also claims that his aggravated assault conviction cannot count as a predicate offense because it involved a motor vehicle and thus was not a violent felony. This claim lacks merit. According to the Presentence Report, petitioner purposefully ran into a police officer with his car while officers were attempting a traffic stop on petitioner's vehicle and the officer sustained injury to his ribs and shoulder. [*Id*. at 13-14, ¶ 48]. Such conduct clearly involved the use of physical force against another and thus met the definition of a violent felony.

Petitioner was properly classified as an armed career criminal. Counsel did not render ineffective assistance in failing to object to the classification.

17

### M. Appellate counsel failed to brief and argue meritorious issues that were preserved at trial.

Petitioner alleges that appellate counsel failed to brief and argue meritorious issues, without specifying such issues. He also alleges that counsel failed to file a petition for writ of certiorari to the Supreme Court.

As previously noted, appellate counsel filed an *Anders* brief in which he raised two issues for review: whether the evidence was sufficient to support the conviction in light of his defense of justification and whether petitioner's sentence was reasonable. *United States v. Lowe*, slip op. at 2 [Doc. 38]. In addition to finding that the evidence was sufficient to overcome petitioner's defense of justification and that his sentence was reasonable, *id*. at 3-4, the Sixth Circuit also conducted an independent review and found no other meritorious issues. [*Id*. at 4]. There being no other meritorious issues for review, counsel was not ineffective in failing to brief and argue additional issues.

With respect to petitioner's claim that counsel was ineffective in failing to file a petition for a writ of certiorari, criminal defendants have no constitutional right to counsel to pursue discretionary appeals in the Supreme Court. *Ross v. Moffitt*, 417 U.S. 600, 612 (1974). Thus an attorney's failure to file a petition for writ of certiorari cannot constitute ineffective assistance of counsel. *Wainwright v. Torna*, 455 U.S. 586, 587 (1982).

Based upon the foregoing, petitioner has failed to demonstrate that he received ineffective assistance of counsel under either prong of the *Strickland* standard.

**IV. Conclusion**

Petitioner is not entitled to relief under § 2255 and his motion to vacate, set aside or correct sentence will be **DENIED**. This action will be **DISMISSED**. In addition to the above, this Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** petitioner leave to proceed in forma pauperis on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER WILL ENTER.**

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE